AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Onofre Gonzalez, a/k/a Onofre Chavez-Gonzalez,<br>Ramon Galindo, a/k/a Ramon Galindo-Palomera<br>and Julio Agustin Gonzalez<br><br>*Defendant(s)* | Case No.<br><br>**8:16MJ1602 JSS** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 8 to September 9, 2016 in the county of Pinellas in the Middle District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1),<br>21 U.S.C. 841(b)(1)(B)(ii) and<br>21 U.S.C 846 | Conspiracy to Distribute Five-Hundred Grams or More of Cocaine and Possession with Intent to Distribute and Distribution of Cocaine |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel P. McCaffrey, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/12/16

_____
*Judge's signature*

City and state: Tampa, Florida

MARK A. PIZZO, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT
## OF CRIMINAL COMPLAINT

I, Daniel P. McCaffrey, after being duly sworn, depose and say as follows:

1. I am commissioned as a Special Agent with the Drug Enforcement Administration (DEA) and have been so appointed since July 2004. I am presently assigned to the DEA Tampa District Office in the Middle District of Florida. My duties as a DEA Special Agent involve the investigation of various criminal activities of narcotics traffickers and their associates.

2. This affidavit is being submitted in support of a Criminal Complaint charging, Onofre GONZALEZ, a/k/a Onofre Chavez-Gonzalez, Ramon GALINDO, a/k/a Ramon Galindo-Palomera and Julio Agustin GONZALEZ with Conspiracy to Distribute Five Kilograms or More of Cocaine, and Possession with Intent to Distribute and Distribution of Cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(ii), and 846. This affidavit does not contain all of the information pertaining to this investigation, and merely provides probable cause for a Court finding. I have personally participated in this investigation described below and am familiar with the information contained in this affidavit either through personal observations or those of other law enforcement officers and credible confidential sources.

## CONFIDENTIAL SOURCE QUALIFICATION

3. The confidential source discussed below in the Probable Cause section is protected due to the existence of an ongoing federal investigation which could be comprised or obstructed if the source was disclosed at this juncture. I know the source to be reliable based upon his/her extensive use in this and other investigations where

information derived from him/her have proven to be highly credible. There is independent investigative corroboration which validates the source's information. The confidential source is cooperating with law enforcement in an effort to receive a sentence reduction on current federal charges.

## PROBABLE CAUSE

4. In August 2016, agents from the DEA along with agents from the Florida Department of Law Enforcement (FDLE) received information from a confidential source (CS) that a Hispanic male, later identified as Ramon GALINDO, was interested in supplying the CS with multiple quantities of cocaine. Specifically, per the CS, GALINDO advised that he and his associates could supply the CS with fifty (50) kilograms of cocaine in the Pinellas County area of Florida. Furthermore, the CS advised that he/she was supposed to meet GALINDO in the near future to continue negotiations for obtaining the noted cocaine.

### A. September 8, 2016 Meeting

5. On September 8, 2016, the CS, at the direction of Law Enforcement, contacted GALINDO, at cellular telephone number 727-504-4637, and agreed to meet later that afternoon/evening to view a sample of cocaine and to continue negotiations for obtaining kilogram quantities of cocaine from GALINDO and his associates. Cellular telephone number 727-504-4637 is subscribed to Ramon GALINDO of Largo, FL.

6. On September 8, 2016, at approximately 7:35pm, the CS contacted GALINDO who instructed the CS to meet him at the business complex located at 7840 126th Avenue North in Largo, FL. A short time later, Clearwater Police Detective Ian Cameron, acting in an undercover capacity, along with the CS, entered an undercover

2

vehicle and traveled, under constant law enforcement surveillance, to the location GALINDO provided.

7. At approximately 8:01pm, the undercover vehicle, containing Detective Cameron and the CS, arrived and parked on the east side of the business located at 7840 126th Avenue in Largo, FL.

8. At approximately 8:04pm, surveillance units observed two (2) unknown Hispanic males, later identified as Ramon GALINDO and Onofre GONZALEZ, walking towards the undercover vehicle. Surveillance units also noticed that O. GONZALEZ was wearing a hat and carrying what appeared to be a small black bag. Once at the undercover vehicle, surveillance units observed GALINDO stand at the open passenger side window while O. GONZALEZ entered the rear passenger seat of the undercover vehicle and subsequently meet with the CS and Det. Cameron. During the meeting, which was captured on audio and video recording equipment, O. GONZALEZ presented the CS, in the presence of Detective Cameron, with a plastic-wrapped kilogram of cocaine. O. GONZALEZ then provided the CS with a knife which the CS utilized to cut into the package and inspect the noted kilogram of cocaine. After examining the cocaine, the CS gave the package of cocaine back to O. GONZALEZ. The CS, O. GONZALEZ and GALINDO then discussed meeting the following day for the CS to obtain approximately twenty (20) kilograms of cocaine. During continued negotiations, GALINDO and O. GONZALEZ informed the CS that their "guy" (source of supply) would not be getting out of the truck during the deal and that he would let them do the talking.

9. At approximately 8:12pm, surveillance units observed GONZALEZ exit the undercover vehicle and GALINDO and GONZALEZ subsequently walk west down the

alleyway just south of the noted business. A few moments later, surveillance units observed GALINDO and GONZALEZ split up and walk in different directions. At that time, GONZALEZ, while carrying the previously identified bag, was observed entering a dark-colored vehicle that was parked and running at the southeast end of the business. A few moments later, surveillance units identified the vehicle as a black Nissan Quest mini-van which contained Florida license tag PF8 82H. The mini-van subsequently departed the area followed by surveillance units.

10. At approximately 8:27pm, surveillance units observed the Nissan mini-van arrive and park at a Walgreens store located in Largo, FL. A few moments later, surveillance units observed O. GONZALEZ exit the front passenger side of the mini-van and enter a white Nissan truck that was parked in the Walgreens lot, before departing the area. Surveillance was maintained on the truck as it departed the area.

11. At approximately 8:40pm, surveillance units observed the white Nissan truck arrive and park in front of the Rainbow Food Mart located at 2575 East Bay Drive in Largo, FL. At that time, surveillance units observed an unknown subject walk from the direction of a dark colored SUV, that was already parked in the lot and contained Florida license tag UUF0H, and enter the front passenger seat of the white Nissan truck. A few moments later, surveillance observed the unknown subject, believed to be Ramon GALINDO, exit the front passenger seat of the Nissan truck and enter the noted dark colored SUV that was parked near the Nissan truck. Both vehicles subsequently departed the area, followed by surveillance units, and traveled together to the neighborhood to the Southeast of the noted food mart.

12. At approximately 8:50pm, surveillance units observed the white truck arrive and park at the residence located at 380 Royal Palm Drive in Largo, FL. Surveillance units then briefly observed the dark colored SUV pull up to the noted residence before departing and subsequently parking at a nearby residence located at 3078 Meadow View Avenue. It should be noted that agents previously discovered that that the noted residence at 3078 Meadow View Avenue was a listed address for Ramon GALINDO.

### B. September 9, 2016 Attempted Controlled Purchase and Arrests

13. On September 9, 2016, the noted CS informed agents that he/she was contacted earlier that morning by GALINDO who advised that the "man" only wants to supply the CS with three (3) kilograms of cocaine to start with to get used to the CS and establish some trust, but would supply the negotiated twenty (20) kilograms of cocaine to the CS in a couple of days.

14. On September 9, 2016, at approximately 1:20pm, surveillance was established at the business located at 7840 126th Avenue North in Largo, FL. At approximately 1:26pm, the CS met with agents and officers at a neutral location in Largo, FL where the CS and CS' vehicle were searched and no contraband was found. The CS was also outfitted with audio recording equipment. At approximately 2:24pm, GALINDO contacted the CS and instructed him/her to head to the location where they met at the previous evening (7840 126th Avenue North in Largo, FL). A few moments later, surveillance units observed a Hispanic male matching the description of GALINDO walking around a work vehicle that was parked on the north side of the noted business.

15. At approximately 2:34pm, the CS departed the neutral location, followed by surveillance units, and traveled to the business located at 7840 126th Avenue North in Largo, FL. After the CS arrived at the noted location, surveillance units observed GALINDO walk from the north side of the business and approach the front passenger side of the CS vehicle. After a few moments, the CS exited the vehicle and met with GALINDO who had walked around to the driver's side of the CS vehicle. During a later debriefing the CS advised that GALINDO informed him/her that "Onofre" (Onofre GONZALEZ) was on his way and that a Cuban guy was bringing GONZALEZ to the location. The CS further stated that the Cuban guy would be bringing GONZALEZ in the black van.

16. At approximately 2:59pm, surveillance units observed a black Nissan Quest mini-van, which contained Florida license tag PF8 82H and was observed by surveillance units the previous evening, arrive at the location and proceed to slowly drive down the road that was on the north side of the business. A few moments later, surveillance units observed a Hispanic male, later identified as Onofre GONZALEZ, exit the front passenger seat of the black Nissan mini-van and proceed to walk down the alley on the West side of the business. The black van was then observed parking in the rear parking lot of a business which was located to the north of the target location.

17. At approximately 3:01pm, surveillance units observed O. GONZALEZ carrying a bag and walking towards the CS' vehicle. A few moments later, surveillance units observed O. GONZALEZ meet with GALINDO and the CS at the CS vehicle. At that time, O. GONZALEZ was observed placing the noted bag into the front driver's side of the CS' vehicle before entering the rear passenger seat of the vehicle. The CS then

entered the driver's seat of the vehicle and met with O. GONZALEZ. While inside the vehicle, the CS examined three (3) plastic wrapped kilograms of cocaine that were contained in the noted bag that had been placed into the vehicle by O. GONZALEZ. After examining the cocaine, a pre-determined arrest signal was given and arrest teams moved in and took GALINDO and O. GONZALEZ into custody. During the arrest, agents observed O. GONZALEZ reach into his waist band before he was placed under arrest. During a subsequent search of O. GONZALEZ, agents discovered a loaded 9mm firearm tucked into his waist band. During a continued search, agents also discovered a loaded firearm magazine inside one of O. GONZALEZ's pockets.

18. At that time, additional units pulled up to the noted black Nissan mini-van and encountered Julio GONZALEZ who was the driver of the vehicle. J. GONZALEZ immediately informed agents that he was an informant for the FBI and that he wanted to speak with the agents. Julio GONZALEZ was subsequently provided his Miranda rights and he stated that he understood his rights and wanted to speak with law enforcement. Post-Miranda, Julio GONZALEZ admitted that he was not acting under the direction of law enforcement during the referenced conspiracy. This was confirmed with FBI Special Agent Maritza Conde, who advised that the conduct referenced in this complaint was not performed under the direction of the FBI. Julio GONZALEZ admitted that he had driven Onofre GONZALEZ to the location and that O. GONZALEZ had a bag containing three (3) kilograms of cocaine. Julio GONZALEZ advised that he also drove Onofre GONZALEZ the night prior to the same location and that he waited for him while Onofre GONZALEZ met with an unknown individual. Julio GONZALEZ stated that subsequent to that meeting, Onofre GONZALEZ informed him that they discussed the sale of twenty

kilograms of cocaine which would take place the following day at the same location. Julio GONZALEZ then advised that it was actually his associate who brought the cocaine to the Largo area. Julio GONZALEZ advised that on the day of the transaction, it was agreed to sell three (3) kilograms of cocaine because his (Julio Gonzalez's) associate had already gotten rid of the remaining kilograms of cocaine, but that if everything went well, they would proceed with a second transaction for the for the remainder of the twenty kilograms once his associate was able to deliver more cocaine to the Largo area.

19. Based upon the information contained in this affidavit, I believe there is probable cause to believe that Onofre GONZALEZ, Ramon GALINDO and Julio Agustin GONZALEZ, knowingly and willfully conspired to possess and possessed with intent to distribute five-hundred grams or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B)(ii) and 846.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Daniel P. McCaffrey, Special Agent
U.S. Drug Enforcement Administration

Sworn to and subsribed before me
This 12 day of September, 2016.

MARK A. PIZZO
United States Magistrate Judge

8